UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN BRADSHAW, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | Case No. |
| Plaintiff, | ) ) | |
| | ) | Jury Trial Demanded |
| v. | ) ) | |
| MIDEA AMERICA CORP. | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Stephen Bradshaw ("Plaintiff"), individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Midea America Corp. ("Midea"), and, in support thereof, alleges as follows:

### INTRODUCTION

1.     Midea manufactures, markets and sells a line of U and U+ Window Air Conditioners (hereinafter, the "**Products**")[1]. Midea touted these Products as expertly designed to easily fit into window spaces, operate quietly, and cool spaces in an energy efficient way. However, despite their widespread popularity, the Products were defectively designed, as pooled water in the Products failed to drain quickly

_____

[1] The model numbers for the Products are listed on the CPSC recall website.

1

enough, leading to mold growth within the units (the "**Defect**"). Midea knew of this Defect through years of customer complaints and reviews. Despite knowing of this Defect, Midea failed to disclose the Defect to consumers in its labeling, packaging, or marketing materials (the "**Material Omissions**"). In response, Midea initiated an inadequate and untimely recall on June 5, 2025 (the "**Recall**"). As a result, hundreds of thousands of dangerously defective Products will remain in American homes. Plaintiff brings suit, individually and on behalf of all others similarly situated, to seek compensation and injunctive relief to fully compensate all consumers who purchased the Products and stop Midea's ongoing failure to fully remedy the Defect and protect consumers from the dangers of using the Products.

## PARTIES

### *Plaintiff Stephen Bradshaw*

2.     Plaintiff Stephen Bradshaw is a citizen and current resident of New York. Plaintiff purchased one of Midea's Products on Amazon in March of 2024. He paid approximately $240 for this Product.

3.     Prior to purchasing the Product, Plaintiff reviewed the Product's packaging and reviews of the Product. Plaintiff observed no safety warnings, no mention of a risk of harm to him from using the Product due to its Defect, nor any mention of consumer complaints made about the Product to the Consumer Product Safety Commission. ("CPSC").

2

4.    Based on Midea's labeling, packaging, and marketing materials, the Material Omissions, and Midea's reputation as an expert on air conditioners, Plaintiff reasonably believed the Product did not suffer from the Defect and did not pose safety risks to himself and others in his household.

5.    Had Plaintiff known that the Product suffered from the Defect and posed a significant safety risk to himself and other individuals he would not have purchased the Product, or would have paid significantly less for it. As such, Plaintiff has been directly financially injured by Midea's deceptive and misleading advertising and defective design of the Products.

***Defendant Midea America Corp.***

6.    Defendant Midea America Corp. is a corporation which serves as the American subsidiary for the Midea Group. Midea America Corp. is headquartered in Parsippany, New Jersey. Upon information and belief, Midea's relevant business decision making, including its marketing for the Products, originated, and continues to originate, out of its New Jersey headquarters and/or its presence in New Jersey.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from

3

Defendant's citizenship; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

8.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts and engages in substantial business in this judicial district, including, but not limited to, the promotion, sale, marketing and distribution of its Products; Defendant committed tortious acts in this State through its misrepresentations and omissions related to the sale, marketing and distribution of the Products; Defendant caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State, given Defendant is headquartered in New Jersey.

9.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. This is especially true given Defendant is headquartered in New Jersey.

## FACTUAL ALLEGATIONS

## I.    Midea Markets the Products for Consumers to Use in Their Homes

10.    Midea manufactures, markets and sells several substantially similar air conditioners to be placed in windows.



11.   Launched in early 2020, the Products were aggressively marketed across various platforms, with Midea even going so far as to creating a 90-minute film "staring" its Products, holding the premier of the film at the Village East by Angelika cinema in Manhattan, with attendees offered a discount on the Products.[2]

12.   The Products were described as "universally beloved," by one review site, with that same article noting specifically its unique design which reduces noise.[3]

---

[2] https://www.contagious.com/news-and-views/campaign-of-the-week-cinema-airs-90-minute-air-conditioning-ad-for-appliances-brand (last accessed June 10, 2025).

[3] https://aftermath.site/midea-u-shape-ac-gone (last accessed June 10, 2025).

13.     In some representations of the Products, the marketing even states that

the Products provide "3-1 Comfort: Cools, Dehumidifies, and Ventilates."



14.     Retailers like Best Buy, Menards, Home Depot, Costco, and Amazon

stocked and sold the Products, making them widely accessible to consumers.

15.     Generally priced between $280 and $500, depending on the model, the

Products  appealed to a broad market segment seeking efficiency and value.

16.    The Products were a commercial success, with approximately 1,700,000 units sold in the United States since 2020.[4]

## II.    The Products Suffer from the Defect which Poses Safety Hazards to Consumers.

17.    Unbeknownst to consumers, the Products suffer from a Defect which puts consumers at risk of inhaling mold.

18.    Specifically, the Defect involved a critical flaw in the Products' draining system, as the pooled water in the air conditioners failed to drain in a timely fashion.

19.    This allowed moisture to accumulate inside the air conditioner, creating an environment conducive to mold growth.

20.    Of course, mold exposure is dangerous to humans, causing fatigue, headaches, respiratory problems, and cognitive issues.

21.    Air conditioners should be designed with robust drainage and water removal systems to ensure that condensate water exits the unit quickly and does not pool inside in order to prevent mold growth, as exposure to mold is dangerous to humans.

---

[4] https://www.cpsc.gov/Recalls/2025/Midea-Recalls-About-1-7-Million-U-and-U-Window-Air-Conditioners-Due-to-Risk-of-Mold-Exposure (last accessed June 10, 2025).

22.    At the time of the recall, 17 reports of consumers experiencing symptoms such as respiratory infections, allergic reactions, coughing, sneezing, and/or sore throats  had been confirmed by the CPSC.[5]

23.    Midea acknowledged the Defect and initiated the Recall, which Plaintiff discusses in more depth later in the Complaint.

**III.    Midea Knew of the Defect.**

24.    Midea knew that its Products were unsafe because of a multitude of complaints and incident reports involving the Products.

25.    For example, Midea's own website fielded the following reviews of the Products complaining of the very Defect that led to the Recall, with Midea even responding to some consumers, showing knowledge of the Defect:

---

[5] *Id.*

### It cools but does not have drainage holes

3 years ago



For it to not leak into wall and house it has to be tilted to a few mm left to tilt . It cools but has a horrible design flaw not drainage holes on the underside of outside end . Canada has humidity and air-conditioning units drip water. The one star yes it cools but one humid day fully damaged paint and the wall.

❌ No, I do not recommend this product.

Helpful?    👍 (2)   👎 (0)    Report



Response from midea:                                                                    3 years ago

**mideapwr**

Hello Mic, thank you for reviewing the Midea 10,000 BTU U-shaped Air Conditioner MAW10V1QWT. We are sorry to hear that your unit is leaking water. We would like to help you with this, please contact us at MideaCustomerCare@hartehanks.com and reference case number 111355766. (BBB A+ Accredited Business)

### Don't Buy!!!!!!!!!!!!!!!!

9 months ago



Filled with mold and slime around the fan after less than two months of use. I cleaned the filter each week and the a/c was installed by a professional. There is one drain hole but the instructions say to only drain the unit before storage so its constantly filled with water that has nowhere to go. I will never buy one of their products again.

❌ No, I do not recommend this product.

Helpful?    👍 (3)   👎 (0)    Report



Response from midea:                                                                    9 months ago

**mideapwr**

Hello Sarah. Thank you for posting your review on our Midea 10,000 BTU U-shaped Air Conditioner. We are sorry to hear about your experience with the unit. For further support with guidelines and addressing concerns, please reach out to us at digitalsupport@midea.com.-Midea Customer Support (BBB A+ Accredited Business)

16 days ago



Mold, Mold, Mold. It filled with mold and the air blows only blows out of one side of the unit. It doesn't work anywhere near as well as it used to after a little over 2 years.

Helpful?    👍 (15)   👎 (2)    Report

9

26.    Similar complaints could be found on the websites of retailers that carried the Products and social media sites like Reddit.



**Do not buy**

Verified Purchase | Posted 11 months ago. Owned for more than 2 years when reviewed.
This reviewer received promo considerations or sweepstakes entry for writing a review.

Does not cool a small bedroom. Also the is the second summer using this and after it being on a few weeks water is standing on inside casing of home. And where louvers are there is a roll type louver and it was covered with a type of thick black mold. I'm assuming that's why the water is building up on the inside of the house part of the unit there is no where for the water to drain it just sits there and molds. I don't have a picture of the mold but here is one with the water sitting. This is after using almost 1/2 roll of paper towels getting it up all day today

 

✕  No, I would not recommend this to a friend

**r/AirConditioners** · 12 days ago
WrongAccountSir                                                        · · ·

### Mold prevention questions for Midea MAW12AV1QWT-C

`Window AC`

With all the recent concerns about mold I'd like to do what I can to prevent it. I bought my MAW12AV1QWT-C U-shaped AC from Costco recently and I'd love to keep it if I can keep it safe.

My model doesn't have a drain hole, is it one of the models that would benefit from drilling two small holes in the exterior bottom corners?

I've seen some videos where people suggest propping open the vent cover to allow light inside. One even suggested removing it along with the louvers. Is that generally considered a good idea?

Is there anything else I'm missing?

27.    Companies like Midea regularly monitor reviews or complaints about their products on third-party websites, so these reviews were further evidence that Midea knew of the Defect.

28.    Moreover, Midea knew of the Defect through CPSC complaints.

29.    The CPSC forwards consumer complaints directly to the manufacturer of a product after it receives and reviews a complaint, especially complaints regarding safety hazards.[6]

30.    One incident report regarding the Products involved a consumer stating that she had found mold in three air conditioners at home, with one unit causing her one-year old to suffer hives, eczema outbreaks, sneezing, runny nose, sore throat, and difficulty swallowing.

---

[6] FAQs, Saferproducts.gov, https://www.saferproducts.gov/FAQs/FrequentlyAskedQuestions2#item2-1 (accessed March 6, 2025).

**Report Summary**

Consumer reports that mold was found in three air conditioners at home. One unit is in 1 YOM's room, and he suffered hives, eczema outbreaks, dry skin, sneezing, runny nose, a sore throat, difficulty swallowing, restlessness, etc. Consumer and husband also suffered issues.

**Product Details**

**Product Description:** Midea U-Shaped Inverter Window Air Conditioner
**Manufacturer/Importer/Private Labeler Name:** Midea America Corporation
**Brand Name:** Midea
**Model Name or Number:** MAW08V1QWT
**Serial Number:**
**UPC Code:**
**SKU#:** 1005978394
**Date Manufactured:**
**Retailer:** Home Depot
**Retailer State:**
**Purchase Date:** 11/1/2021
**Product Category:** Home Maintenance and Structures
**Product Type:** Heating, Ventilation & Air Conditioning
**Product Code:** Air Conditioners (381)

**Associated Recall**

**Incident Details**

**Incident Description:** LARGE amounts of black, fuzzy mold was discovered in all 3 of our U-Shaped Midea air conditioners. One air conditioner is in our 1 and a half year old son's nursery and has been installed right before he was born. He has had a constant battle of hives, eczema outbreaks, extremely dry skin, sneezing, runny nose, constant sore throat, difficulty swallowing, restlessness, etc. This mold was only discovered after shining a flashlight into ALL 3 units in 08/30/2023. This was done to try to find the source of a musty smell and we would have never known to do this if it wasn't for a [REDACTED] video we watched: [REDACTED] Our mold problem looks EXACTLY like what is seen in this video. We our beyond disgusted and frustrated that our son has to deal with a lifetime of health issues because of this mold. His eczema outbreaks and dry skin has gotten so much worse over the past year and we never knew the cause of it until now. My husband and I have also experienced systems such as sneezing, constant sore throat, sinus infections, nosebleeds, itchy eyes, etc. [7]

31.     Another consumer reported that he was concerned about the lack of a condensate drain in the air conditioner.

---

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4361304 (last accessed June 10, 2025).

**Report Summary**

The Consumer reports that their window air conditioner has no condensate drain. The Consumer is concerned that over time, bacteria could accumulate and grow in the standing water inside the casing.

**Product Details**

**Product Description:** Product is a new design U-shaped air conditioner, 12,000 BTU window unit.

**Manufacturer/Importer/Private Labeler Name:** Midea America Corporation

**Brand Name:** Midea

**Model Name or Number:** MAW12AV1QWT

**Serial Number:** 541203001E0312902V4443

**UPC Code:** 8 40296 50290 7

**SKU#:** 1677429

**Date Manufactured:** 1/1/2023

**Retailer:** https://www.costco.com/

**Retailer State:**

**Purchase Date:** 7/2/2023

**Product Category:** Home Maintenance and Structures

**Product Type:** Heating, Ventilation & Air Conditioning

**Product Code:** Air Conditioners (381)

**Associated Recall**

**Incident Details**

**Incident Description:** Product is an air conditioner without a condensate drain. Over time bacteria could accumulate and grow in the standing water inside the casing

**Incident Date:** 7/29/2023

**Incident Location:** Home/Apartment/Condominium

[8]

## IV. Midea Omits Any Information from the Defect and its Associated Safety Hazards from Its Labeling, Packaging, and Marketing Materials.

32.     Despite having knowledge of the Defect for years, Midea failed to disclose the Defect to consumers.

---

[8] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4307275 (last accessed June 10, 2025).

33.    In fact, there is no information or warning on the Defect given to consumers through Midea's labeling, packaging, online or marketing materials, nor through any product descriptions on Midea's website or the websites of third-party retailers.

34.    Instead, Midea for years has made Material Omissions regarding the Products by failing to provide consumers with warnings, or any information at all, about the Defect and the associated safety hazards.

35.    Thus, consumers therefore have no reasonable way to know at the time of purchasing the Products about the Defect or the serious hazards posed by the Defect, specifically the risk of mold exposure.

36.    Instead, consumers are left to believe that the Products are safe for use at home and do not suffer from known, undisclosed defects, such as the Defect that led to the recall of the Products.

**V.    Midea's Marketing of the Products is Misleading to Reasonable Consumers.**

37.    Midea engages in deceptive and misleading advertising of the Products to promote them on the open market—all at the expense of unsuspecting consumers.

38.    Midea's Material Omissions mislead reasonable consumers because no reasonable consumer would purchase or pay a premium price for the Products if they knew about the Defect and its attendant risks.

14

39.    Midea makes Material Omissions that mislead reasonable consumers because any reasonable consumer would want to know—and is entitled to know—that the Products pose serious risks to users before purchasing the Products.

40.    From Midea's marketing, consumers cannot reasonably discern that the Products contain the Defect and pose serious safety risks to consumers, nor can consumers reasonably decipher from the Products himself that there is a known and hazardous Defect.

41.    Consumers do not realize that, even when the Products are used as intended, the Defect presents serious hazards and risks to humans. Consumers reasonably expect that Midea—which has far greater expertise in product safety and knows and knew about the Defect and its attendant safety risks—would not advertise the Products with Material Omissions in the face of such significant safety concerns.

42.    Similarly, Midea does not put consumers on notice of the Defect and attendant risks to people using the Products. Midea had, and continues to have, a duty to warn consumers about the Defect because it presents a safety hazard, but it did not, and does not.

43.    Midea's failure to include information about the Defect and the attendant risks on the labels, physical packaging, online descriptions is further misleading as a Material Omission.

44.     The expectation that the Products are labeled and advertised truthfully is material to reasonable consumers' decisions to purchase the Products, particularly when the Defect makes it so that Midea's Products pose a risk of harm to humans. A reasonable person would find it important to his or her purchasing decision whether the Products suffered from a Defect that posed a safety risk when used as intended.

45.     Plaintiff and the Members of the Class purchased the Products for up to $500.00, a considerable premium over other window unit air conditioners. But for Midea's Material Omissions, however, Plaintiff and Members of the Class would not have purchased the Products at the price they paid or on the terms offered. Had consumers been made aware of the Products' Defect, they would have paid significantly less for them or would have purchased different products. As a result, consumers have been financially injured by Midea's labeling, online marketing and advertising practices.

**VI.    Midea is Forced to Initiate the Recall, but the Recall is Untimely and Inadequate.**

46.     On June 5, 2025, Midea initiated the Recall of the Products in conjunction with the CPSC.[9]

---

[9] https://www.cpsc.gov/Recalls/2025/Midea-Recalls-About-1-7-Million-U-and-U-Window-Air-Conditioners-Due-to-Risk-of-Mold-Exposure (last accessed June 10, 2025).

47.    In the recall, Midea for the first time admitted publicly what it had known for years, that the Products contained a Defect that posed safety hazards to users, specifically mold accumulation.

48.    But far from offering significant relief to consumers, Midea's Recall fails to provide full monetary relief to consumers.

49.    Instead, the "remedy" offered by the Recall is a repair or prorated refund based on the purchase date or date of manufacture. To get the refund, customers have to return the unit to Midea or submit a photograph showing that they cut the unplugged power cord.[10]

50.    As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[11]

51.    In sum, the Recall explicitly keeps the dangerous Products in millions of American homes and forces consumers to actively reach out to Midea for the incomplete relief offered.

---

[10] *Id.*

[11] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (accessed March 6, 2025).

## VII.    Plaintiff Has No Adequate Remedy at Law

52.    Plaintiff seeks restitution if monetary damages are not available. Plaintiff is entitled to do so under the Federal Rules of Civil Procedure. *In re K–Dur Antitrust Litig.,* 338 F.Supp.2d 517, 544 (D.N.J. 2004) ("Under the Federal Rules of Civil Procedure, Plaintiff have the prerogative to plead alternative and even conflicting theories of recovery.")

53.    Indeed, restitution can be awarded in situations where the entitlement to damages may prove difficult.

54.    But even if damages were available, such relief would not be adequate to address the injuries suffered by Plaintiff and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

55.    Plaintiff and the Class seek all monetary and nonmonetary relief allowed by law, including restitution stemming from Midea's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs; injunctive relief and other appropriate equitable relief.

## FED. R. CIV. P. 9(b) ALLEGATIONS

56.    Although Midea is in the best position to know what content it placed on its marketing materials during the relevant timeframe, and the knowledge that it

18

had regarding the Products' Defect and attendant risks and its failure to disclose these, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity.

57. ***Who:*** Midea made the Material Omissions relating to the Defect and attendant safety risks. It made these Material Omissions on the Products' packaging, its website, and marketing materials, in written and electronic form.

58. ***What:*** Midea's conduct here was, and continues to be, fraudulent because it made Material Omissions that failed to disclose the Defect in its Products, which posed safety risks to consumers. Midea's conduct deceived Plaintiff and the Class into believing that the Products possess no known defects presenting serious safety risks to consumers. Midea knew that this information is material to reasonable consumers, including Plaintiff and the Class, in making their purchasing decisions; yet it omitted and continues to omit any warning that the Products contain the Defect. No reasonable consumer would expect that the Products contain the Defect which presents serious safety hazards to consumers.

59. ***When:*** The Material Omissions detailed herein were made, prior to and at the point of sale, leaving Plaintiff and the Class unaware of the Defect and its attendant safety risks before purchasing the Products.

60. ***Where:*** Midea's Material Omissions were made on its labeling, packaging, and marketing materials, on its website and through its social media, in

written and electronic form.

61.    **How:** Midea made Material Omissions regarding the Defect found in all Products, as well as the serious safety hazards attendant to the Defect, in written and electronic form on the Products' labeling, packaging, marketing materials, its own website, and third-party retailer websites, in written and electronic form.

62.    **Why:** Midea made the Material Omissions for the express purpose of inducing Plaintiff and the Class to purchase the Products, allowing Midea to profit by selling the Products to nearly two million consumers.

63.    **Injury:** Plaintiff and the Class paid more for the Products than they otherwise would have absent Midea's Material Omissions about the Defect and the attendant safety risks. Consumers continue to suffer economic harm by purchasing Products with the Defect that pose safety risks to consumers.

## TOLLING ALLEGATIONS

I.    **Discovery Rule**

64.    The causes of action alleged herein accrued upon discovery of Midea's Material Omissions related to the labeling, marketing, and advertising of the Products. Because of Midea's Material Omissions, Plaintiff and Members of the Class did not discover, and could not have known, that the Products suffer from a Defect that poses safety risks through reasonable and diligent investigation. Reasonable and diligent investigation did not, and could not, reveal a factual basis

for a cause of action based on Midea's Material Omissions and concealment of the Defect.

## II.    Fraudulent Concealment

65.    Any applicable statutes of limitation have been tolled by Midea's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

66.    Midea was, and is, under a continuous duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Products—particularly with respect to the Defect and attendant safety risks.

67.    At all relevant times, Midea knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Products and sold the Products into the stream of commerce with the Material Omissions and Defect.

68.    Given Midea's failure to disclose this non-public information, over which Midea had exclusive control, about the nature of the Products, the Defect, and attendant safety risks—and because Plaintiff and the Class could not reasonably have known the true nature of the Products or the Defect posed—Plaintiff and the Class reasonably relied on Midea's Material Omissions. Had Plaintiff and the Class known that the Products had a Defect which posed serious safety hazards to the public, they would have paid significantly less for the Products.

69.    Plaintiff and the Class have been kept ignorant by Midea of vital

information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true nature of the Products, the Defect, and attendant risks they pose.

## III.    Estoppel

70.    Midea was, and is, under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Products. Midea knowingly, affirmatively, and actively concealed the true character, quality and nature of the Products, and the concealment is on-going. Midea knew of the serious safety hazards the Defect and the Products posed to consumers and has actively concealed them. Plaintiff and the Class reasonably relied on Midea's Material Omissions. For these reasons, Midea is estopped from relying on any statute of limitations in defense of this action.

71.    Additionally, Midea is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ALLEGATIONS

72.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) and 23(c)(4), on behalf of himself and the Members of the following proposed nationwide class ("**Nationwide Class**"):

> **During the fullest period allowed by law, all persons who purchased the Products in the United States for personal use and not resale.**

73.    Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) and 23(c)(4), on behalf of himself and the Members of the following proposed multi-state class ("**Multi-State Consumer Protection Class**"):

> **During the fullest period allowed by law, all persons who purchased the Products in the States of California, Florida, Illinois, New York, Massachusetts, Michigan, Minnesota, Missouri, New Jersey and Washington[12] for personal use and not resale.**

74.    Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the Members of the following New York class ("**New York Class**"):

> **During the fullest period allowed by law, all persons who purchased the Products in the State of New York for personal use and not resale.**

75.    The Nationwide Class, Multi-State Consumer Protection Class, and the New York Class  are referred to collectively as the "**Class**" or "**Classes**," and the Members of the Classes are referred to as the "**Class Members**." Excluded from the Classes are the following individuals and/or entities: Midea and its parents, subsidiaries, affiliates, officers and directors, current or former employees and any entity in which Midea has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting

---

[12] Plaintiff seeks to certify a Multi-State Consumer Protection Class consisting of persons in the following states (and implicating the following statutes): California (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 ICLS §§ 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Chapter 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq*.); New Jersey (N.J. Stat. §§ 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, *et seq*.); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.).

out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

76.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether class certification is appropriate.

77.    ***Numerosity:*** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiff but is likely to be ascertainable via Midea's records. According to Midea's Recall, it sold nearly two million Products.

78.    ***Commonality:*** There are questions of law and fact common to the proposed Class(es). Common questions of law and fact include, without limitation:

A.    whether Midea's course of conduct alleged herein violates the statutory and common law claims pled in this Class Action Complaint;

B.    whether Midea knew, or should have known, its Material Omissions were false or misleading;

C.    whether Midea omitted or failed to disclose material information to Plaintiff and Class Members regarding the Products;

D.    whether Midea engaged in false, deceptive, or misleading

conduct in the marketing, advertising, labeling, and sale of the Products;

E.    whether Midea was unjustly enriched by retaining monies from the sale of the Products;

F.    whether certification of each Class is appropriate under Rule 23;

G.    whether Plaintiff and Class Members have been injured by Midea's misconduct, and the proper measure of their losses as a result of those injuries;

H.    whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages; and

I.    whether Plaintiff and the Members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief.

79.    *Typicality:* Plaintiff's claims are typical of the other Class Members because Plaintiff, as well as Class Members, purchased the Products and relied on the Material Omissions made by Midea about the Products prior to and at the time of the purchases of the Products. Plaintiff and the Members of each Class paid for Midea's Products and would have paid substantially less for them had they known that MIdea's representations were untrue or deceptive, had they been made aware of

the Defect and attendant safety risks presented through the use of the Products.

80.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the Members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in class action litigation. Thus, the interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and their counsel.

81.    *Predominance:* Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Class Action Complaint predominate over any individual ones. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Midea's misconduct detailed at length in this Class Action Complaint.

82.    *Superiority:* A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Class Action Complaint/lawsuit. Further, because the damages suffered by any individual Class Member may be relatively modest in relation to the cost of litigation, the expense, and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class

Members may be unaware that claims exist against Midea.

83.    ***Declaratory and Injunctive Relief:*** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Midea has acted, or refused to act, on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole. Unless a class-wide injunction is issued, Midea will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Class Action Complaint, and Members of the Classes will continue to be misled, harmed, and denied their rights under the law. Plaintiff and the Classes do not have an adequate remedy at law because damages alone will not stop Midea's unlawful misrepresentations and omissions. Additionally, Plaintiff seeks restitution if monetary damages are not available. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and the Classes.

## COUNT I
### Breach of Contract
***(On Behalf of Plaintiff for the Nationwide Class or, in the Alternative, the New York Class)***

84.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

85.    Plaintiff brings this claim himself and on behalf of the Members of the Nationwide Class. Alternatively, he brings this claim under New York law for

himself and Members of the New York Class.

86.    Plaintiff and Class Members entered into contracts with Midea when they placed orders to purchase the Products. A valid contract existed between Plaintiff and the Class Members, on one hand, and Midea, on the other.

87.    The contracts provided that Plaintiff and Class Members would pay Midea for the Products ordered.

88.    The contracts further required that Midea provide Plaintiff and Class Members with Products that were devoid of the Defect. These were specific and material terms of the contracts.

89.    Through these contracts, Midea expressly warranted that the Products were fit for their intended purpose.

90.    Midea made the foregoing warranties to all consumers, which became part of the basis of the bargain between Plaintiff, Class Members, and Midea.

91.    Plaintiff and Class Members paid Midea for the Products they ordered and satisfied all other conditions of their contracts.

92.    Midea breached the contracts with Plaintiff and Class Members by failing to provide Products that did not contain the Defect. Midea further breached its contracts when it failed to disclose the risks of serious harm to Plaintiff and Class Members before and at the time of purchase of the Products.

93.    Midea also violated any implied covenant of good faith inherent in the

contracts by selling Plaintiff and Class members Products that contained the Defect.

94.    As a direct and proximate result of Midea's breaches, Plaintiff and Class Members were deprived of the benefit of their bargained-for exchanges and have suffered damages in an amount to be established at trial.

95.    On June 11, 2025, Plaintiff sent Midea a notice letter notifying it of its breach. Midea was further aware of its breach due to the CPSC recall and complaints related to the Defect.

**COUNT II**
**Breach of Express Warranty**
**N.Y. U.C.C. Law § 2-313**
*(On behalf of Plaintiff and the Nationwide Class or, in the Alternative, Plaintiff and the New York Class)*

96.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

97.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class. Breach of express warranty claims are substantially similar in all fifty states.[13] In the alternative, on behalf of himself and the Members of the New York Class.

98.    Midea, as manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by representing that the Products were safe for use as intended. This was an affirmation of fact about the Products and

---

[13] The New York Statute cited above is modeled on the U.C.C.

a promise relating to the goods.

99.    These warranties were part of the basis of the bargain and Plaintiff and Class Members relied on these warranties.

100.    But the Products do not conform to the above referenced warranty because, as alleged in detail above, the Products labeling and advertising is inaccurate due to the Material Omissions.

101.    Plaintiff and Class Members were injured as a direct and proximate result of Midea's conduct, and this conduct was a substantial factor in causing harm, because they would not have paid the price they paid for the Products absent the Material Omissions made by Midea.

102.    On June 11, 2025, Plaintiff sent Midea a notice letter notifying it of its breach. Midea was further aware of its breach due to the CPSC recall and complaints related to the Defect.

**COUNT III**
**Breach of Implied Warranty**
**N.Y. U.C.C. Law § 2-314**
***(On behalf of Plaintiff and the Nationwide Class or, in the Alternative, Plaintiff and the New York Class)***

103.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

104.    Plaintiff brings this claim himself, and on behalf of the Nationwide Class against Midea. Breach of implied warranty claims are materially similar in all

fifty states. In the alternative, Plaintiff brings under New York law for himself and Members of the New York Class.

105.   New York's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

106.   New York's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. Law § 2-314(2)(f).

107.   Midea impliedly warranted that the Products were merchantable and fit for the ordinary purposes for which they were intended to be used, which includes safe use of the Products in the home.

108.   Defendant breached its implied warranty of merchantability when they manufactured, distributed, and sold the Products in unmerchantable condition. These Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used, which is safely cool the home.

109.   Therefore, the Products are not merchantable under the U.C.C. or New York Law, and Midea breached its implied warranty of merchantability in regards

to the Products.

110.   Plaintiff and Class Members that purchased directly from Midea as described above have had sufficient direct dealings with either Midea or its agents to establish privity of contract between Midea on one hand and Plaintiff and Class Members on the other hand. Indeed, the Product purchased by Plaintiff was sold through Amazon.

111.   If Plaintiff and Class Members had known that the Products' advertising and packaging was false and misleading, they would not have been willing to purchase them, or in the alternative they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Midea's breach, Plaintiff and Class Members have suffered injury and deserve to recover all damages afforded under the law.

112.   On June 11, 2025, Plaintiff sent Midea a notice letter notifying it of its breach. Midea was further aware of its breach due to the CPSC recall and complaints related to the Defect.

## COUNT IV
### Fraud
### (*On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, for the New York Class*)

113.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

114.   Plaintiff brings this claim himself, and on behalf of the Nationwide

Class against Midea. Common law fraud claims are materially similar in all fifty states. In the alternative, Plaintiff brings under New York law for himself and Members of the New York Class.

115.   As alleged above, Midea made false and misleading representations to Plaintiff and other Class Members when it marketed the Products with the Material Omissions.

116.   When Midea made these Material Omissions, Midea knew they were false and/or acted recklessly in making them.

117.   Midea's fraudulent Material Omissions were knowing and intentional and was intended to induce Plaintiff and Class Members to purchase the Products. Plaintiff and Class Members reasonably relied on the Material Omissions in purchasing the Products.

118.   Midea's Material Omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

119.   In addition, class-wide reliance can be inferred because Midea's Material Omissions were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Products.

120.   In deciding to purchase the Products from Midea, Plaintiff and Class Members reasonably relied on Midea's Material Omissions to form the mistaken belief that the Products did not possess the Defect which presented serious safety

hazards to consumers.

121.   Midea had a duty to disclose the Defect because it had superior knowledge and access to material facts about the Products, and a reasonable consumer could not have reasonably expected or known that the Products possessed the Defect and its attendant risks.

122.   Plaintiff and Class Members were injured as a direct and proximate result of Midea's conduct because Plaintiff and Class Members would have paid nothing or significantly less for the Products if they knew that the Products contained the Defect which presented safety risks to consumers.

123.   Midea's acts were done maliciously, oppressively, deliberately, and with intent to defraud and in reckless disregard of Plaintiff's and the Class Members' rights and well-being in order to enrich Midea. Midea's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
### Negligent Misrepresentation
**(*On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, for the New York Class*)**

124.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

125.   Plaintiff brings this count on behalf of himself and the Nationwide Class against Midea. Common law negligent misrepresentation claims are materially

34

similar in all fifty states. In the alternative, Plaintiff brings this claim under New York law for himself and Members of the New York Class.

126.   As alleged more fully above, Midea made false and misleading representations to Plaintiff and other Class Members when it marketed the Products with the Material Omissions.

127.   When Midea made these Material Omissions, it knew or reasonably should have known that the Material Omissions were false and misleading. Midea had no reasonable grounds for believing that the Material Omissions were true when made.

128.   Midea intended that Plaintiff and Class Members rely on the Material Omissions. Plaintiff and Class Members reasonably relied on the Material Omissions in purchasing the Products.

129.   Midea concealed information related to whether the Products possessed the Defect and the attendant safety risks.

130.   Midea had a duty to disclose the Material Omissions because it had superior knowledge and access to material facts about the Products, and a reasonable consumer could not have reasonably expected or known that the Products possessed the Defect and the attendant safety risks.

131.   Midea's Material Omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

132.   In addition, class-wide reliance can be inferred because Midea's Material Omissions were material, *i.e.*, a reasonable consumer would consider it important in deciding whether to buy the Products.

133.   Plaintiff and Class Members were injured as a direct and proximate result of Midea's conduct because Plaintiff and Class Members would not have purchased the Products, or would have paid significantly less for them, if they knew the Products were dangerously defective.

## COUNT VI
### Quasi Contract/Unjust Enrichment/Restitution
**(*On Behalf of Plaintiff and the Nationwide Class or, in the Alternative, for the New York Class*)**

134.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

135.   Plaintiff brings this claim himself and on behalf of the Members of the Nationwide Class against Midea. In the alternative, Plaintiff brings this claim under New York law for himself and Members of the New York Class against Midea.

136.   As alleged herein, Midea has used misleading Material Omissions on Plaintiff and Members of the Classes to induce them to purchase the Products. Plaintiff and Members of the Classes have reasonably relied on the misleading Material Omissions but have not received all of the benefits promised by Midea. Plaintiff and Members of the proposed Classes have therefore been induced by Midea's misleading Material Omissions about the Products and paid more money to

36

Midea for the Products than they otherwise would and/or should have paid.

137.    Plaintiff and Members of the Classes have conferred a benefit upon Midea as Midea has retained monies paid to them by Plaintiff and Members of the Classes.

138.    The monies received by Midea were obtained under circumstances that were at the expense of Plaintiff and Members of the Classes—*i.e.*, Plaintiff and Members of the Classes did not receive the full value of the benefit conferred upon Midea. Therefore, it is inequitable and unjust for Midea to retain the profit, benefit, or compensation conferred upon it.

## COUNT VII
### Violation of State Consumer Protection Statutes
### (*On Behalf of Plaintiff and the Multi-State Consumer Protection Class*)

139.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

140.    Plaintiff brings this claim himself and on behalf of the Members of the Multi-State Consumer Protection Class against Midea.

141.    Plaintiff and Multi-State Consumer Protection Class Members have been injured as a result of Midea's violations of the state consumer protection statutes listed above, which also provide a basis for redress to Plaintiff and Multi-State Consumer Protection Class Members based on Midea's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct.

142.  Midea's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

143.  Midea's marketing of the Products violates these prohibitions by deceiving consumers into believing that the Products do not possess the Defect and attendant safety risks when, in fact, this is not true.

144.  Midea has engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of applicable law.

145.  Midea engaged in misleading and deceptive advertising by using the Material Omissions. Midea chose to package and market the Products in this way to impact consumer choices, extract price premiums, and gain market dominance, as it is aware that all consumers who purchased the Products would be impacted by its Material Omissions and would reasonably believe Midea's false and misleading Material Omissions.

146.  Midea intended that Plaintiff and other Multi-State Consumer Protection Class Members would rely upon the Material Omissions.

147.  Midea's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other Multi-State Consumer Protection Class Members to be deceived about the true

nature of the Products.

148.  As a direct and proximate result of Midea's violations of the laws identified in footnote 12, Midea caused Plaintiff and other Multi-State Consumer Protection Class Members to have suffered ascertainable loss of money caused by Midea's Material Omissions.

149.  Had they been aware of the true nature of the Products, Plaintiff and other Multi-State Consumer Protection Class Members would have paid less or nothing at all for the Products.

150.  Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and the Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages, including, but not limited to, treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

151.  On June 11, 2025, Plaintiff sent Midea a notice letter notifying it of its violation of these laws. Midea was further aware of its violations due to the CPSC recall and complaints related to the Defect.

## COUNT VIII
### Violation Of New York General Business Law § 349 ("GBL")
#### (*On Behalf of Plaintiff and the New York Class*)

152.  Plaintiff repeats the allegations contained in the above paragraphs as if

fully set forth herein.

153.   Plaintiff brings this claim himself and on behalf of the Members of the New York Class against Midea.

154.   GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

155.   The conduct of Midea alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek monetary damages.

156.   Midea misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers through the Material Omissions, as described above.

157.   Midea's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class to purchase and pay a premium for the Products when they otherwise would not have.

158.   Plaintiff and the New York Class have been injured inasmuch as they paid a premium for Products that possessed the Defect and the attendant safety risks, contrary to Midea's Material Omissions about the Products. Had they known the truth about the Products, Plaintiff and the New York Class would not have purchased at the price they paid them – *e.g.*, they paid a price premium for the Products. Accordingly, Plaintiff and the New York Class received less than what they

bargained and/or paid for.

159.  Midea made its untrue and/or misleading statements and Material Omissions willfully, wantonly, and with reckless disregard for the truth.

160.  As a result of Midea's unlawful deceptive acts and practices, Plaintiff and the New York Class are entitled to monetary, compensatory, statutory, treble, and punitive damages, restitution and disgorgement of all moneys obtained by means of Midea's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IX
### Violation Of New York General Business Law § 350 ("GBL")
### (*On Behalf of Plaintiff and the New York Class*)

161.  Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

162.  Plaintiff brings this claim himself and on behalf of the Members of the New York Class against Midea.

163.  GBL § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

164.  GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by

statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

165. Midea made Material Omissions. Specifically, Midea concealed information related to whether the Products possessed the Defect and attendant safety risks. As a result of Midea's Material Omissions, reasonable consumers formed the mistaken belief that the Products were safe to use and free from the Defect and safety risks.

166. Midea's advertising of the Products induced Plaintiff and the New York Class to buy Midea's Products. Thus, Midea made material representations through its Material Omissions about the Products.

167. Plaintiff and the New York Class have been injured inasmuch as they paid a premium for Products that posed contained the Defect and attendant safety risks, contrary to Midea's Material Omissions regarding the Products. Had they known the truth about the Products, Plaintiff and the New York Class would have paid significantly less for the Products – *e.g.*, they paid a price premium. Accordingly, Plaintiff and the New York Class received less than what they bargained and/or paid for.

168. Midea made the foregoing untrue and/or misleading representations

willfully, wantonly, and with reckless disregard for the truth.

169.   As a result of Midea's unlawful deceptive acts and practices, Plaintiff and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Midea's unlawful conduct, interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, himself and on behalf of the proposed Classes, respectfully pray for following relief:

A.   Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representatives, and appointment of their counsel as Class Counsel;

B.   A declaration that Midea's actions, as described herein, violate the claims described herein;

C.   An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, *inter alia*, an order prohibiting Midea from engaging in the unlawful act described above;

D.   An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Midea obtained

from Plaintiff and the proposed Classes as a result of its unlawful, unfair, and fraudulent business practices described herein;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Midea's conduct;

F.    An award of nominal, punitive, treble, and statutory damages;

G.    An award to Plaintiff and their counsel of reasonable expenses and attorneys' fees;

H.    An award to Plaintiff and the proposed Classes of pre-judgment and post-judgment interest, to the extent allowable; and

I.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

Dated: June 13, 2025               /s/ *Zachary Arbitman*
                                   Zachary Arbitman
                                   George Donnelly*
                                   **FELDMAN SHEPHERD WOHLGELERNTER**
                                   **TANNER WEINSTOCK & DODIG, LLP**
                                   1845 Walnut Street, 21st Floor
                                   Philadelphia, PA 19103
                                   T: (215) 567-8300
                                   F: (215) 567-8333
                                   zarbitman@feldmanshepherd.com
                                   gdonnelly@feldmanshepherd.com

*Attorneys for Plaintiff*

*Pro Hac Vice Application Forthcoming